IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Alice Elaine Crooks,                 :

          Plaintiff,                 :

     v.                              :        Case No. 2:13-cv-605

                                     :        JUDGE EDMUND A. SARGUS, JR.
Commissioner of Social Security,              Magistrate Judge Kemp

          Defendant.                 :


REPORT AND RECOMMENDATION

I.  Introduction

     Plaintiff, Alice Elaine Crooks, filed this action seeking
review of a decision of the Commissioner of Social Security
denying her application for disability insurance benefits.  That
application was filed on April 27, 2010, and alleged that
Plaintiff became disabled on December 31, 2006.

     After initial administrative denials of her application,
Plaintiff was given a hearing before an Administrative Law Judge
on April 19, 2012.  In a decision dated May 8, 2012, the ALJ
denied benefits.  That became the Commissioner's final decision
on May 1, 2013, when the Appeals Council denied review.

     After Plaintiff filed this case, the Commissioner filed the
administrative record on October 28, 2013.  Plaintiff filed her
statement of specific errors on December 27, 2013, to which the
Commissioner responded on March 31, 2014.  Plaintiff replied on
April 2, 2014, and the case is now ready to decide.

     II.  Plaintiff's Testimony at the Administrative Hearing

     Plaintiff, who was 45 years old at the time of the
administrative hearings and had a twelfth grade education with
some college, testified as follows.  Her testimony appears at
pages 35-67 of the administrative record.

Plaintiff owned a laundromat at one time.  She sold it in 2010 due to her health concerns.  While she owned the business, she was required physically to be present to help out customers. Before that, she worked as an insurance agent for her husband's business, a job which ended when she and her husband were divorced.  She had not looked for work since selling the laundromat.

Plaintiff testified that she could not work due to general fatigue and pain.  Most of the pain was in her legs and hands. Several times a week she also had hip pain.  The hand pain caused problems with getting dressed, bathing, or holding a pen.  Her next most significant problem related to being unable to concentrate due to sleeping issues.  She described an inability to wake up on her own, to the point where she had to pay someone to come to her house and wake her up.  She took medication to help her stay awake, as well as medication for pain.

Plaintiff was able to make her bed and do some cleaning. However, she did not fix meals for herself.  She was unable to get out of bed several days per week.

### III.  The Medical Records

The medical records in this case are found beginning on page 233 of the administrative record.  The pertinent records can be summarized as follows.

On September 20, 2005, Plaintiff completed a sleep study. The results showed mild sleep apnea and periodic limb movement disorder.  She did not follow through with the next recommended test for narcolepsy, however.  (Tr. 236-37).

In 2007, Plaintiff was diagnosed with major depression, posttraumatic stress disorder, ADHD, and a history of narcolepsy. At that time, Dr. Jenkins started her on a trial of Wellbutrin. Zoloft was added to her medications several months later and she reported improvement in her mood.  The impression at that time

-2-

included Sjorgen's syndrome.  In April, 2008, she reported feeling well in terms of her mood and she could "focus and function and work daily at her business." (Tr. 311).  She did report struggling with intermittent pain due to connective tissue disease but she was "able to keep going in spite of it." Id.  By November of that year, her mood was good, and although she was struggling with narcolepsy, she liked her job, was able to enjoy life, and was getting out and socializing.  (Tr. 317).  She was still working in August, 2009.  A report dated February 26, 2010, was essentially the same.  (Tr. 326).  By April, 2010, she was reporting substantial pain from her lupus but she was able to cope with it.  She was not depressed at that point.  (Tr. 352).  She was still reporting only periodic depression in October, 2011.  (Tr. 358-59).  The last note from Dr. Jenkins, dated April, 2012, showed that Plaintiff was reporting more depression as well as increased pain, and she and Dr. Jenkins discussed coping strategies.  A medication change was made at that time.  (Tr. 382).

Plaintiff was seen by Dr. Stainbrook on April 16, 2010, for a rheumatology consult.  She reported aching and fatigue which began twenty years before.  On examination, she demonstrated more than 11 of 18 fibromyalgia trigger points.  She also had severe pain in her tailbone and in various other joints and tendons.  Dr. Stainbrook's impressions included severe hand and wrist pain, right shoulder pain, right hip pain, knee, ankle and foot pain, a history of Sjorgen's syndrome by biopsy, and other maladies by history.  Additional tests were recommended, and Plaintiff was told that stretching, aerobic exercise, and physical therapy were the recommended treatment for many of her disorders.  (Tr. 332-33).

Dr. Weaver saw plaintiff for a disability evaluation on July 22, 2010.  She reported that her last day of work was February 8,

2010. Her primary complaint was constant dull pain and stiffness in her back, shoulders, hands, right hip, ankles, and toes, as well as diffuse muscular pain. She walked with a stiffened gait and complained of pain when walking. The right lower quadrant of her abdomen was tender and had been so for some time. Her arms and legs showed some enlargement and tenderness but no muscle atrophy. Trigger points were palpated in both extremities as well as her hands. Her grip strength was inhibited by pain. Dr. Weaver's provisional diagnosis was probable chronic low back pain, multiple upper and lower extremity joint pain, and probable narcolepsy by medical history. He believed Plaintiff was limited in her ability to perform various physical activities including sustained sitting, standing, walking, climbing, reaching, squatting, stooping, lifting, carrying, handling objects, and travel. (Tr. 340-45).

In addition to the medical records, the file contains evaluations done by state agency physicians. Dr. Brock reported on August 16, 2010, that he thought Plaintiff could do a limited range of light work with a number of restrictions, including doing only limited fingering with her left hand. (Tr. 94-95). Dr. Bertani confirmed that evaluation on December 1, 2010. (Tr. 104-05). Two reviewers also said that Plaintiff did not have a severe psychological impairment.

IV. The Vocational Testimony

Dr. Jerry Olsheski was the vocational expert in this case. His testimony appears at pages 69-75 of the administrative record.

Dr. Olsheski testified that Plaintiff had worked as a laundromat manager, a skilled, sedentary job. Her job as an insurance agent was skilled and light.

Dr. Olsheski was then asked some questions about a hypothetical person who could work at the light exertional level

but could only stand and walk for four hours in a workday and for
up to thirty minutes at a time.  The person could not climb
ladders, ropes or scaffolds and could only occasionally climb
ramps and stairs, balance, stoop, kneel, crouch, crawl, and
finger with the left hand.  According to Dr. Olsheski, someone
with those restrictions could perform Plaintiff's past relevant
work as a laundromat manager but not the insurance sales agent
job.  Such a person could also perform unskilled jobs such as
cleaner, production inspector, or packing and filling machine
operator.  He also identified the number of such jobs in the
local and national economies, and he testified that someone who
could do only simple, routine tasks could still do these jobs.

Dr. Olsheski was then asked if certain additional
restrictions on the use of foot pedals, handling, fingering, and
repetitive forceful grasping would affect the person's work
abilities.  He said that the laundromat manager job would not be
affected, and that such a person could also work as a production
inspector or hand packer.  All of those jobs would be precluded
if the person could only occasionally handle and finger, however.
The same would be true for a person off task over ten percent of
the workday or who missed two or more days a month.

V.   The Administrative Law Judge's Decision

The Administrative Law Judge's decision appears at pages 14-
27 of the administrative record.  The important findings in that
decision are as follows.

The Administrative Law Judge found, first, that Plaintiff
met the insured requirements for disability benefits through
December 31, 2013.  Next, Plaintiff had not engaged in
substantial gainful activity from December 31, 2006 forward.  As
far as Plaintiff's impairments are concerned, the ALJ found that
Plaintiff had severe impairments including lupus, osteoarthritis
of the hands and feet, right knee tendonitis and bursitis,

acromioclavicular joint bursitis, bursitis in the biceps and hips, tarsal tunnel syndrome, chrondromalacia patella, Sjorgen's syndrome, fibromyalgia, restless leg syndrome, sleep apnea, major depression, post-traumatic stress disorder, and attention deficit hyperactivity disorder.  The ALJ also found that these impairments did not, at any time, meet or equal the requirements of any section of the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1).

Moving to the next step of the sequential evaluation process, the ALJ found that Plaintiff had the residual functional capacity to perform work at the sedentary exertional level except she could never climb ladders, ropes, or scaffolds, could occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl, could frequently push, pull and operate foot pedals with her legs, could frequently reach overhead bilaterally, could frequently handle and finger bilaterally, could not perform repetitive forceful grasping, and was limited to simple, routine unskilled tasks.  The ALJ found that, with these restrictions, Plaintiff could not perform her past relevant work, but she could perform certain jobs identified by Dr. Olsheski - specifically production inspector and hand packer - and that such jobs existed in significant numbers in the local and national economies (150 and 95,000, respectively). Consequently, the ALJ concluded that Plaintiff was not entitled to benefits.

## VI.  Plaintiff's Statement of Specific Errors

In her statement of specific errors, Plaintiff raises these issues: (1) the ALJ did not establish that Plaintiff could perform work existing in significant numbers; (2) the ALJ did not resolve discrepancies between Dr. Olsheski's testimony and the Dictionary of Occupational Titles; and (3) the ALJ did not craft a proper residual functional capacity finding, leaving out

certain psychological symptoms and symptoms caused by Plaintiff's
sleep apnea and restless leg syndrome.  The Court analyzes these
claims under the following standard.

Standard of Review.  Under the provisions of 42 U.S.C.
Section 405(g), "[t]he findings of the Secretary [now the
Commissioner] as to any fact, if supported by substantial
evidence, shall be conclusive. . . ."  Substantial evidence is
"'such relevant evidence as a reasonable mind might accept as
adequate to support a conclusion'"  Richardson v. Perales, 402
U.S. 389, 401 (1971) (quoting Consolidated Edison Company v.
NLRB, 305 U.S. 197, 229 (1938)).  It is "'more than a mere
scintilla.'" Id.  LeMaster v. Weinberger, 533 F.2d 337, 339 (6th
Cir. 1976).  The Commissioner's findings of fact must be based
upon the record as a whole.  Harris v. Heckler, 756 F.2d 431, 435
(6th Cir. 1985); Houston v. Secretary, 736 F.2d 365, 366 (6th
Cir. 1984); Fraley v. Secretary, 733 F.2d 437, 439-440 (6th Cir.
1984).  In determining whether the Commissioner's decision is
supported by substantial evidence, the Court must "'take into
account whatever in the record fairly detracts from its weight.'"
Beavers v. Secretary of Health, Education and Welfare, 577 F.2d
383, 387 (6th Cir. 1978) (quoting Universal Camera Corp. v. NLRB,
340 U.S. 474, 488 (1951)); Wages v. Secretary of Health and Human
Services, 755 F.2d 495, 497 (6th Cir. 1985).  Even if this Court
would reach contrary conclusions of fact, the Commissioner's
decision must be affirmed so long as that determination is
supported by substantial evidence.  Kinsella v. Schweiker, 708
F.2d 1058, 1059 (6th Cir. 1983).

A.  Work in Significant Numbers

Plaintiff's first argument focuses on the number of
sedentary unskilled jobs identified by Dr. Olsheski.  As noted,
he testified about only two such jobs, production inspector and
hand packer.  He said that there were 150 total such jobs

-7-

available in the regional economy and 95,000 in the national economy.  Plaintiff contends that given the small number of such jobs, the ALJ did not do a proper evaluation of whether that number is significant enough to support a finding that she can perform substantial gainful activity.

An individual is not entitled to disability benefits if he or she can perform "substantial gainful activity . . . ."  See, e.g., 42 U.S.C. §416(j)(1).  In a case which is not controlled by the Medical-Vocational Guidelines, and where vocational evidence is necessary to determine the number of jobs available to a claimant with both exertional and non-exertional limitations, it is sometimes difficult to determine how many jobs constitute "substantial gainful activity" within any regional or national economy.

The Court of Appeals for the Sixth Circuit addressed this question in Hall v. Bowen, 837 F.2d 272 (6th Cir. 1988).  In that case, the Court determined that 1,500 jobs identified by a vocational expert constituted "substantial gainful activity" even though that number of jobs represented only a fraction of one percent of the total jobs available in the regional economy.  The Court recognized that numbers are not, by themselves, conclusive on this issue, and that the Commissioner and the reviewing court must take into account a variety of factors which include the level of the claimant's disability, the reliability of both the vocational expert's and the claimant's testimony, the distance that the claimant can travel in order to obtain and hold employment, whether the jobs identified are isolated in nature, and the types and availability of work within the region. See also Born v. Secretary of HHS, 923 F.2d 1168, 1174 (6th Cir. 1990).  All of those factors are germane to the determination of the substantial nature of the jobs identified.  Born also makes it clear that, in making this determination, the Commissioner is permitted to focus on an appropriate regional economy as well as the claimant's local economy.

Plaintiff's argument focuses almost exclusively on the numbers of jobs which Dr. Olsheski identified. Although she argues that the ALJ did not explicitly consider the factors set out in Hall v. Bowen, as the Commissioner points out, that is not required. See, e.g., Harmon v. Apfel, 168 F.3d 289, 292 (6th Cir. 1999)(the Hall factors are "suggestions only — the ALJ need not explicitly consider each factor"); see also Swett v. Comm'r of Social Sec., 2008 WL 552481, *13 (S.D. Ohio Feb. 26, 2008). Further, this Court has held that as few as 109,000 jobs in the national economy constitutes a significant number. See McQueen v. Comm'r of Social Security, 2014 WL 533496, *5 (S.D. Ohio Feb. 11, 2014), adopted and affirmed 2014 WL 879880 (S.D. Ohio Mar. 5, 2014), citing, inter alia, Nash v. Sec'y of H.H.S., 59 F.3d 171, 1995 WL 363381, at *3 (6th Cir. June 15, 1995)(70,000 national jobs was a significant number). The existence of 95,000 such jobs is therefore not below any "magic threshold" for the number of jobs which can be deemed significant. The Court therefore defers to the ALJ as the fact-finder on this issue, and finds no merit in Plaintiff's first argument.

## B.  The DOT Conflict

Next, citing to Social Security Ruling 00-4p, Plaintiff argues that although the ALJ identified a conflict between Dr. Olsheski's testimony and the DOT - on the issue of whether any hand packer jobs can be performed at the sedentary level - the ALJ did not actually resolve that conflict. According to Plaintiff, the ALJ did not provide any explanation for accepting Dr. Olsheski's testimony over the information contained in the DOT, and that was error.

SSR 00-4p provides, in part, that an ALJ "must ... [e]xplain in the determination or decision how any conflict that has been identified was resolved." It further directs an ALJ to determine "if the explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony rather

than on the DOT information."  The Ruling does recognize that, in some instances, the vocational expert "may be able to provide more specific information about jobs or occupations than the DOT."

It is clear that the ALJ both identified the conflict between Dr. Olsheski's testimony and the DOT and that he resolved it in favor of Dr. Olsheski.  The question then becomes whether he provided an adequate explanation of his reasoning when he said, at Tr. 27, that Dr. Olsheski "relied on his professional expertise" in determining that the DOT was not completely accurate in its characterization of hand packer jobs as medium work, and that "based on his experience, sedentary hand packer jobs existed in the numbers referenced above nationally and regionally."  The Court concludes that this is a sufficiently detailed explanation to satisfy SSR 00-4p.

Neither party has cited case law which directly addresses the issue of how much detail must be found in an ALJ's decision to satisfy the "explanation" prong of SSR 00-4p, and there does not appear to be a wealth of case law on this issue.  However, in Massachi v. Astrue, 486 F.3d 1149, 1153 (9th Cir. 2007), the court noted that "[t]he procedural requirements of SSR 00–4p ensure that the record is clear as to why an ALJ relied on a vocational expert's testimony."  This Court agrees that this is one of the purposes of the Ruling.  Using that standard, it is clear to the Court that the ALJ not only accepted Dr. Olsheski's testimony about the existence of sedentary hand packer jobs, but did so for the reasons cited by Dr. Olsheski.  Since the basis of the decision is clear, there is no violation of SSR 00-4p, and no basis for reversal or remand on this issue.

C.  The Residual Functional Capacity Finding

Plaintiff's last argument is that the ALJ's residual functional capacity finding did not take into account limitations

-10-

caused by her psychological impairments - specifically,
limitations in the area of concentration, persistence, and pace -
nor physical limitations caused by her sleep apnea and restless
leg syndrome.  She contends that under Ealy v. Comm'r of Social
Security, 594 F.3d 504 (6th Cir. 2010), the ALJ's decision to
limit her to the performance of simple, unskilled tasks is not a
proper accommodation to the moderate impairment in concentration,
persistence, and pace which the ALJ found her to suffer from.
That is so, she says, because someone with such limitations may
not be able to perform those tasks in a timely manner, and that
might preclude her from being able to perform them in a way
satisfactory to the typical employer.  In response, the
Commissioner argues that Ealy involved very specific speed and
pace-based limitations which were not incorporated into the
hypothetical question posed to the vocational expert in that
case, but that no such restrictions appear in this record.

    Here, despite the absence of significant evidence that
Plaintiff suffered from psychological conditions affecting her
concentration, persistence and pace - and with two opinions from
state agency reviewers that Plaintiff had no severe psychological
impairments at all - the ALJ credited Plaintiff's testimony and
evidence about the extent of her pain in finding that she had
moderate difficulties in this area.  (Tr. 18).  He did not,
however, either include in his residual functional capacity
finding or in his questions to Dr. Olsheski any restrictions on
the type of work environment in which plaintiff could perform
tasks, such as a limit to work which was not fast-paced or which
did not have strict production quotas.

    That omission is significant in light of Ealy's holding that
a "streamlined" hypothetical omitting any pace or speed-based
limitations, but restricting the claimant to the performance of
simple, repetitive tasks was inadequate.  Ealy cited with
approval the decision in Edwards v. Barnhart, 383 F.Supp. 2d 920,

930-31 (E.D. Mich. 2005) which observed that a claimant with an impairment in concentration, persistence and pace might not be able to perform a routine job at a consistent pace. Ealy, 594 F.3d at 516-17. This Court has approved limiting a claimant to simple tasks as a means of addressing problems with concentration, see Starr v. Comm'r of Social Security, 2013 WL 653280, *3 (S.D. Ohio Feb. 21, 2013), but in that case, the ALJ also limited the claimant to performing tasks in an environment without fast-paced production demands, which, the Court said, accounted for limits in persistence and pace. The ALJ in this case did not include that restriction. In a case like this, the Court has held that Ealy squarely rejected the proposition "that routine, simple jobs adequately account for deficits in memory, attention, concentration, and pace." Renn v. Comm'r of Social Sec., 2010 WL 3365944, *6 (S.D. Ohio Aug. 24, 2010). This Court has also noted that jobs including hand packer and inspector "presumably would include demands of pace or quotas that may prove incompatible with" moderate limitations in the ability to maintain concentration, persistence and pace. Willis v. Astrue, 2011 WL 3566814, *6 (S.D. Ohio July 26, 2011), adopted and affirmed 2011 WL 3566690 (S.D. Ohio Aug, 15, 2011). See also Hambrick v. Comm'r of Social Security, 2014 WL 1961945 (S.D. Ohio May 15, 2014)(remanding case where the ALJ found moderate limitations in concentration, persistence and pace, but restricted the claimant to the performance of tasks in a routine work setting and made no mention of pace or production quotas).

Here, the determination about whether the two jobs identified by Dr. Olsheski can be performed by someone who has moderate difficulties in concentration, persistence and pace is a factual one. That question can be answered only by competent vocational testimony given in response to a hypothetical question which properly incorporates limitations based on that moderate impairment. Since that did not occur here, a remand is needed in

order to develop the record properly as to whether Plaintiff can perform either or both of those jobs.

## VII. <u>Recommended Decision</u>

Based on the above discussion, it is recommended that the Plaintiff's statement of errors be sustained to the extent that this case be remanded to the Commissioner of Social Security pursuant to 42 U.S.C. §405(g), sentence four, to address the issue raised by Plaintiff's third assignment of error.

## VIII. <u>Procedure on Objections</u>

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a <u>de novo</u> determination of those portions  of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation <u>de novo</u>, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  <u>See Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>United States v. Walters</u>, 638 F.2d 947 (6th Cir. 1981).

/s/ Terence P. Kemp
United States Magistrate Judge
